## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

INSTITUTE OF AMERICAN INDIAN ARTS,
a federal corporation, JOHN GRITTS, individually
and in his official capacity, JANE OLIVER,
individually and in her official capacity, FRANCIS
BANNOWSKY, individually and in her official
capacity, DIANE REYNA, individually and in her
official capacity, and CARMEN HENAN,
individually and in her official capacity,

   Plaintiffs,

vs.                        Civ. No. 06-1179 JCH/RLP

NELSON B. GIPP,

   Defendant.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Plaintiffs' Motion for Default and Entry of Permanent Injunction, filed January 22, 2007 [Doc. 8]. The Court, having considered the Motion, briefs, and relevant law, and being otherwise fully informed, finds that the Motion is not well taken and will be denied.

### BACKGROUND

On February 7, 2007, the Court held a hearing on the Motion for Default and Entry of Permanent Injunction. The Plaintiffs were represented by Melissa Wurtzel O'Shea, Esq. The Defendant did not appear in person or through counsel. To date, the Defendant has not entered an appearance in this case or otherwise responded to the Plaintiffs' Complaint, First Amended Complaint, or pleadings.

1

At the hearing on the Motion for Default and Entry of Permanent Injunction, Plaintiffs' counsel set forth evidence by proffer and presented argument in support of the Motion. At the close of the hearing, the Court took the Motion under advisement and requested that Plaintiffs' counsel file a memorandum identifying the civil cause of action set forth in the Complaint. On February 13, 2007, the Plaintiffs filed their Brief in Support of the Motion for Default and Permanent Injunction [Doc. 11] ("Brief").

In their Brief, the Plaintiffs identified the enabling legislation granting the Institute of American Indian Arts ("IAIA") the authority to own, maintain, use, and operate real property. 20 U.S.C. §§ 4401 *et seq*. The Plaintiffs also noted that the enabling legislation authorized the IAIA Board of Trustees to sue and be sued and to exercise all lawful powers related to carrying out the provisions of the enabling legislation. 20 U.S.C. § 4414(a)(4) & (14). The Plaintiffs explained that pursuant to this enabling legislation, the IAIA enacted General Policies that relate to the operation of the IAIA campus and museum property, including the Prohibition of Violent Acts contained in Section 2.8 of the General Policies, which provides that the IAIA "prohibits violence and threats of violence at any IAIA location." The Plaintiffs explained that based upon the IAIA's enabling legislation, the IAIA had the right to maintain and operate its property in any lawful manner and that it had enacted the Prohibition of Violent Acts policy to provide a safe environment for those on its campus.

The Plaintiffs' Brief did not identify any civil cause of action set forth in the Complaint. Rather, the Brief simply justified the IAIA's promulgation of the Prohibition of Violent Acts policy by referencing the IAIA's enabling legislation. The propriety or lawfulness of the IAIA's Prohibition of Violent Acts policy, however, was not at issue before the Court.

On February 16, 2007, the Court issued an Order Requesting Additional Information [Doc. 14], giving the Plaintiffs a second chance to identify any civil cause of action in the Complaint. The Court explained that the Plaintiffs were asking the Court to "enter a permanent injunction against Defendant precluding him from making . . . . threats" "*based on* IAIA's policies and enabling legislation," without identifying any civil cause of action arising under the IAIA's policies or enabling legislation. Although the Plaintiffs were maintaining that the enabling legislation authorized the IAIA to "sue and be sued," the Plaintiffs had not demonstrated how the legislation itself established an underlying cause of action or granted the Plaintiffs a private right of action to seek a permanent injunction. The Court pointed out that before being awarded the remedy of a permanent injunction, the Plaintiffs would first have to identify an underlying civil cause of action set forth in their Complaint and then prove facts (by way of default) supporting that claim. The Court explained that only after the Court had concluded that the (undisputed) facts established liability on the cause of action asserted could the Court grant the injunctive relief requested. To allow the Court to conduct this inquiry, the Court ordered Plaintiffs' counsel to file a pleading providing detailed answers, with supporting legal authority, to numerous specific questions.

On February 23, 2007, the Plaintiffs filed their Supplemental Brief in Support of their Motion for Default and Permanent Injunction [Doc. 15] ("Supplemental Brief"), which addressed the majority of the Court's questions, but left several of the Court's questions unanswered. The Plaintiffs also filed, that same day, a Motion to Amend the Complaint [Doc. 16].

On March 5, 2007, the Court granted the Plaintiffs' Motion to Amend the Complaint [Doc. 17], and the Plaintiffs filed their First Amended Complaint on March 14, 2007. The Plaintiffs have not filed a return of service indicating that the Amended Complaint was personally served upon the

Defendant. The Plaintiff's counsel informed the Court that Plaintiffs had served the Defendant only by mail.

## DISCUSSION

Even though the Defendant is in default, the Court nonetheless has an obligation to determine whether the unchallenged facts in the First Amended Complaint constitute a legitimate cause of action, since a party in default admits only the well-pleaded facts and not the conclusions of law in the complaint. *See, e.g.*, Charles A. Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice & Procedure § 2688 & n.7, n.15.[1] In their First Amended Complaint, Plaintiffs seek a preliminary injunction barring the Defendant from contacting or attempting to contact the individual Plaintiffs or other IAIA officials, threatening harm or verbally or physically harassing the individual Plaintiffs or other IAIA officials, and entering or attempting to enter IAIA property. To prevail on a request for a preliminary injunction, a plaintiff must demonstrate, among other things, a likelihood of success on the merits of an underlying claim. To prevail on a request for a permanent injunction, a plaintiff must succeed on the merits of an underlying claim. Accordingly, entry of an injunction, whether preliminary

---

[1] *See Thompson v. Wooster*, 114 U.S. 104, 113 (1884) ("[A] decree pro confesso is not a decree as of course according to the prayer of the bill . . . ; but that it is made (or should be made) by the court, according to what is proper to be decreed upon the statements of the bill assumed to be true."); *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("[A] defendant's default does not in itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered"; "The defendant is not held to admit . . . conclusions of law.") (citing *Wooster*, 114 U.S. at 113); *see also Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994) (default judgment does not preclude a party from challenging the sufficiency of the complaint) (citing *Wooster*, 114 U.S. at 113); *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988) (same) (citing *Wooster*, 114 U.S. at 113) (additional citations omitted).

or permanent, requires an underlying cause of action.

The Plaintiffs maintain that their First Amended Complaint sets forth two underlying causes of action: (1) violation of the IAIA's policies enacted pursuant to its enabling legislation, 20 U.S.C. § 4401 *et seq*., and (2) civil assault. With respect to the first alleged cause of action, the Plaintiffs claim that the IAIA's enabling legislation and its enacted policies provide an underlying cause of action and that the Court has the authority to enter a permanent injunction based upon the IAIA's legislation and policies. It is unclear what cause of action the Plaintiffs believe the IAIA's enabling legislation gives rise to. The Court's Order Requesting Additional Information required, among other things, that the Plaintiffs identify the specific elements of their underlying civil cause of action and the facts in the Complaint sufficient to establish each element of that cause of action. The Plaintiffs, however, neglected to point to any elements of a civil cause of action or otherwise identify an underlying civil claim arising under the IAIA's enabling legislation or its enacted policies. Rather, the Plaintiffs simply, without support and without specificity, made the general statement that the "Plaintiffs' civil cause of action stems from its enabling legislation and its enacted policies relating to its property."

The IAIA's enabling legislation does not create a civil cause of action. The legislation is neither prescriptive or proscriptive. It neither mandates conduct nor outlaws it. Unlike other federal legislation, such as the Americans with Disabilities Act, the Age Discrimination in Employment Act, or even the Amendments to the Constitution, which are enforceable pursuant to 42 U.S.C. Section 1983, the IAIA's enabling legislation does not establish a cause of action, civil or otherwise, for breach of the IAIA's internal policies, or, more specifically, for violent or threatening conduct toward employees of the IAIA. *Compare* 20 U.S.C. § 4442(c) (making it a

crime to "make[] a false statement of material fact knowing it to be false . . . for the purpose of obtaining or increasing . . . any payment of funds under the [enabling legislation]").  Rather, the IAIA's legislation simply provides for the creation of the IAIA to preserve and enhance Indian art and culture, and sets forth the powers of the Board of Trustees of the IAIA and the functions of the IAIA.  Although the legislation authorizes the Board of Trustees to enact rules and policies necessary to implement its functions, the legislation does not address violation of any such rules and policies or provide any remedy for such violation.  Indeed, the Plaintiffs point to no analogous precedent indicating that a cause of action arises solely out of the violation of a school's internal policies.  Typically, such a violation would result in disciplinary action under a school's internal disciplinary policy and not in the federal courts.  Although policies set forth in an employee handbook may give rise to a breach of contract claim, no such claim is presented (nor is the Court suggesting that any such claim could be stated) here.  Accordingly, the Plaintiffs cannot state a claim for relief for violation of the IAIA's policies enacted pursuant to its enabling legislation.

The Court further notes that even if the IAIA's enabling legislation mandated or outlawed behavior (rather than simply created an organization and described its functions), the Plaintiffs' claim nonetheless would fail because the IAIA does not provide directly for judicial review or create a private right of action.  Indeed, no provision of the IAIA's enabling legislation grants a private right of action to a plaintiff, and no provision of the legislation provides for any mechanism to enforce the IAIA's policies enacted pursuant to the enabling legislation.  *Compare* 42 U.S.C. § 1983 (granting a private right of action to enforce federal rights, including rights under the Constitution).

Moreover, the Plaintiffs have not pointed to any language in the statute from which the Court could imply a private right of action to enforce policies enacted pursuant to the IAIA's enabling legislation. *Cf. Alexander v. Sandoval*, 532 U.S. 275, 286 (2001); *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 16 (1979). To determine whether an implied right of action exists, the Court must decide whether Congress expressly or by implication, intended to create a private cause of action. *Boswell v. Skywest Airlines, Inc*., 361 F.3d 1263, 1267 (10th Cir. 2004) (citing *Sonnefenld v City & County of Denver*, 100 F.3d 744, 747 (10th Cir. 1996); *Transamerica Mortgage*, 444 U.S. at 15-16; *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575 (1979)). In its recent decisions, the Supreme Court has emphasized that the private right of action inquiry focuses on the Congressional intent underlying the particular statute at issue:

> Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress. The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy. Statutory intent on this latter point is determinative. Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute. Raising up causes of action where a statute has not created them may be a proper function for common-law courts, but not for federal tribunals.

*Alexander*, 532 U.S. at 286-87 (internal quotation marks and citations omitted).

In "determining Congressional intent under this newer standard, [the Court must] examine the statute for 'rights-creating language,'" *id.* at 288, that which "explicitly confers a right directly on a class of persons that includes the plaintiff," *Boswell*, 361 F.3d at 1267 (citing *Cannon v. Univ. of Chicago*, 441 U.S. 677, 690 n.13 (1979)), and language identifying 'the class

7

for whose especial benefit the statute was enacted,' *id.* (citing *Cannon*, 441 U.S. at 688 n.9 (internal quotation marks omitted)).

As described herein, the IAIA's enabling legislation contains no rights-creating language that explicitly confers a right upon a class of persons that includes Plaintiffs (or, indeed, upon any class of persons). Rather, the legislation only creates the IAIA to preserve and enhance Indian art and culture, sets forth the powers of the Board of Trustees of the IAIA, and establishes the functions of the IAIA. "Federal courts are courts of limited jurisdiction, and they may not hear claims without jurisdiction conferred by statute." *Dunn-McCampbell Royalty Interest v. Nat'l Park Serv.*, 112 F.3d 1283, 1286 (5th Cir. 1997) (noting that the enabling legislation did not provide for direct judicial review or create a private right of action) (citing *Veldhoen v. United States Coast Guard, T.A.*, 35 F.3d 222, 225 (5th Cir.1994)). The IAIA's enabling legislation contains no private right of action. Accordingly, the Plaintiffs' claim for relief pursuant to the IAIA's enabling legislation must fail.

The Plaintiffs also allege that the Defendant has committed civil assault. The Plaintiffs properly state that civil assault is an "act, threat or menacing conduct which causes another person to reasonably believe that he is in danger of receiving an immediate battery." *Baca v. Velez*, 114 N.M. 13, 15 (N.M. Ct. App. 1992). According to the Plaintiffs, the Defendant committed civil assault against Plaintiff IAIA and the individual Plaintiffs John Gritts, Jane Oliver, Francis Bannowsky, Diane Reyna, and Carmen Henan. The Plaintiffs cite the following facts in support of their claim: (1) the individual Plaintiffs were involved in the decision to disenroll the Defendant in the Spring of 2006, (2) the Defendant "contacted various employees of the IAIA making threats," (3) the Defendant contacted the Plaintiff John Gritts, Director of

Enrollment, telephonically on November 28, 2006, to inquire about an admission application, and during the conversation stated that "white people should not be allowed on campus" and that Plaintiff "Jane Oliver shouldn't be on the campus," (4) that same day, the Defendant called the Learning Support Group to speak to Plaintiff Oliver, a counselor at the Support Group with whom the Defendant had previously spoken, (5) when Ms. Oliver was unavailable, IAIA staff referred the Defendant to Plaintiff Francis Bannowsky, to whom the Defendant spoke for twenty to thirty minutes, (6) during his conversation with Ms. Bannowsky, the Defendant stated (a) he was "going to get back into college," (b) he "had learned to get rid of [those not of his tribe] and would do whatever it takes to get back in," (c) he had killed people, and (d) "Jane Oliver needed to go," and (7) Ms. Bannowsky reported her conversation with the Defendant to Plaintiff Diane Reyna, Director of the Learning Support Group, and Ms. Reyna, in turn, reported the incident to the Santa Fe County Sheriff's Office.

      The Defendant's conduct as currently alleged by the Plaintiffs, although serious, does not state a claim for the tort of civil assault. With respect to Plaintiff IAIA, a federal corporation is not a "person" capable of "reasonably believ[ing] that he is in danger of receiving an immediate battery." Accordingly, Plaintiff IAIA has not stated a cause of action for civil assault against the Defendant.

      With respect to Plaintiff Carmen Henan, Dean of Students, the facts alleged do not indicate that the Defendant engaged in an act, threat, or menacing conduct sufficient to cause Ms. Henan reasonably to believe she was in danger of receiving an "immediate" battery. The Plaintiffs have not alleged that the Defendant engaged in any direct conduct toward Ms. Henan. Although the Plaintiffs allege that they each were involved in the decision to disenroll the

9

Defendant from the IAIA in the Spring of 2006, and that since his disenrollment, the Defendant "has contacted various employees of the IAIA making threats," these general statements, without any specific reference to Ms. Henan, are insufficient to state a claim for civil assault. The November 28, 2006, threats specifically alleged likewise make no reference to Ms. Henan. Therefore, the Plaintiffs have not demonstrated that the Defendant engaged in an act, threat, or menacing conduct toward Ms. Henan sufficient to state a claim for relief.

In addition, even if the Plaintiffs had alleged that the Defendant made specific threats toward Ms. Henan, the Court nonetheless would conclude that the Plaintiffs have not stated a claim for civil assault. The First Amended Complaint alleges that the Defendant threatened IAIA employees over the telephone, without providing any additional factual support sufficient to demonstrate that the Defendant's conduct placed the Plaintiffs reasonably in fear of receiving an immediate battery. *Compare* Restatement (Second) of Torts § 24 (the victim "must believe that the act may result in imminent contact unless prevented from so resulting by the [victim's] self-defensive action or by his flight or by the intervention of some outside force."); *compare id.* cmt. a ("If the [victim], though knowing of the act done by the actor and realizing that it is intended to cause him a bodily contact, believes, whether reasonably or unreasonably, that the means adopted by the actor are in and of themselves incapable of effectively carrying out his purpose, he has not been put in such an apprehension as is necessary to make the actor liable."). The Plaintiffs have not alleged that the Defendant approached Ms. Henan *in person* and made a specific threat toward Ms. Henan that he *immediately* was capable of carrying out and intended to carry out. Rather, they allege that the Defendant called Ms. Henan over the telephone without specifying that the Defendant was in sufficient proximity to inflict an immediate battery on Ms.

Henan.  Moreover, the Plaintiffs have not alleged that the Defendant engaged in an act but rather only that the Defendant made threatening statements.  Words standing alone, however, are not sufficient to place a person in fear of receiving an immediate battery.  *See id.* § 31; *see also, e.g.*, *Kramer v. Ricksmeier*, 139 N.W. 1091(Iowa 1913); *Kaufman v. Kansas City Light & Power Co.*, 58 P.2d 1055 (Kan. 1936); *Gelhaus v. Eastern Air Lines*, 194 F.2d 774 (5th Cir. 1952); *Cucinotti v. Ortmann*, 159 A.2d 216 (Pa. 1960).[2]

The Court does not doubt that under certain circumstances a threat over a telephone line could form part of the factual basis of a civil assault claim.  For example, if an assailant was on the telephone in close physical proximity to the intended victim (*e.g.*, on the other side of an easily-opened door), the victim was aware of the assailant's close physical proximity and the ease and speed at which the assailant could break through the door, the assailant was making threatening comments over the telephone line, and the assailant was attempting to open the door, the assailant's conduct could certainly constitute civil assault.  The Plaintiffs, however, have alleged no such facts here, and Plaintiff Henan's claim therefore must fail.

Plaintiff Reyna's civil assault claim likewise must fail.  The sole specific reference to Ms. Reyna in the Amended Complaint indicates that Plaintiff Bannowsky reported the Defendant's threatening remarks during their November 28, 2006, telephone conversation to Ms. Reyna, and that Ms. Reyna informed the Santa Fe County Sheriff's Office of the Defendant's

---

[2] Words may give meaning to an act, and when both are taken together they may create a well-founded fear of a battery in the mind of the person at whom they are directed, thereby constituting an assault.  *Holcombe v. Whitaker*, 318 So. 2d 289, 294 (Ala. 1975); *see also* Restatement (Second) of Torts § 31 ("Words do not make the actor liable for assault unless together with other acts or circumstances they put the other in reasonable apprehension of an imminent harmful or offensive contact with his person.").

threats.  Although the Plaintiffs assert additional general allegations that the Defendant made unspecific threats to unnamed employees of the IAIA after his disenrollment, and that all of the Plaintiffs were involved in the decision to disenroll the Defendant, these allegations are insufficient to demonstrate that a reasonable person in Ms. Reyna's position would believe that she was in danger of receiving an immediate battery from the Defendant.  Because the Plaintiffs have not alleged that the Defendant committed an act, made a threat, or engaged in any menacing conduct toward Ms. Reyna sufficient reasonably to place her in fear of receiving an immediate battery, Ms. Reyna's claim for civil assault must fail.

For the same reasons, Defendant's telephone conversation with Mr. Gritts, in which he stated "white people should not be allowed on campus" and that "Jane Oliver shouldn't be on the campus," is insufficient to establish that Mr. Gritts reasonably believed he was in danger of receiving an immediate battery from the Defendant.  The Plaintiffs have made no allegations that establish that the Defendant was directing his threats toward Mr. Gritts or that he was capable of committing an immediate battery against Mr. Gritts.  In addition, as the Court already has noted, words alone cannot constitute the tort of civil assault.  Accordingly, Mr. Gritts cannot state a claim for civil assault.

Although the Defendant's threatening comments to Francis Bannowsky are more serious, the Plaintiffs nonetheless have failed to allege facts sufficient to state a claim for civil assault against Ms. Bannowsky.  The Plaintiffs allege that the Defendant told Ms. Bannowsky over the telephone that "he was going to get back into the college" and that "he knew how to get rid of [those he felt did not belong]."  The Defendant also told Ms. Bannowsky that he had "killed people" in the past and that "Jane Oliver needed to go."  Although the Defendant's comments

12

were clearly menacing and threatening, both toward Ms. Oliver, and, given the seriousness of the statements, toward Ms. Bannowsky, these comments occurred over the telephone line with no additional facts demonstrating that the Defendant was in a close physical proximity sufficient reasonably to render Ms. Bannowsky in fear of receiving an immediate battery.  Because words standing alone, with no accompanying act or conduct, cannot state a claim for relief, Ms. Bannowsky's civil assault claim cannot stand.

   Defendant's threatening and menacing conduct targets Plaintiff Oliver most directly. The Defendant contacted Mr. Gipp telephonically and informed him that "Jane Oliver shouldn't be on the campus."  The Defendant attempted to contact Ms. Oliver telephonically on at least one occasion.  The Defendant informed Ms. Bannowsky over the telephone that he had killed people in the past and that "Jane Oliver needed to go."  The Defendant's statements were undoubtedly threatening and menacing, and certainly would cause a reasonable person in Ms. Oliver's position to be seriously concerned.  To constitute civil assault, however, conduct (and not simply words) must place a reasonable person in fear of receiving an immediate battery.  The First Amended Complaint is devoid of any allegations indicating that the Defendant was in sufficient physical proximity to Ms. Oliver to be capable of inflicting an immediate battery upon her, or that the Defendant committed any act in addition to uttering threatening words.  In the absence of any such facts, the Court cannot conclude that Ms. Oliver reasonably was in fear of receiving an immediate battery, and therefore Ms. Oliver's civil assault claim must fail.

   Although the Court has concluded that the Plaintiffs have not stated a claim for civil assault against the Defendant, the Court in no way intends to minimize the seriousness of the Defendant's conduct or express any opinion regarding the legality of the Defendant's conduct.

The Court simply concludes that the facts alleged are insufficient to state a claim for relief under the IAIA's enabling legislation or for the tort of civil assault.  The Court does not rule out the possibility that the Defendant's conduct otherwise violates the law.

## CONCLUSION

**IT THEREFORE IS ORDERED** that the Plaintiffs' Motion for Default and Entry of Permanent Injunction, filed January 22, 2007 [Doc. 8] is **DENIED**;

**IF FURTHER IS ORDERED** that the Plaintiffs shall have twenty (20) days from the date of this Memorandum Opinion and Order to file a pleading explaining why this case should not be dismissed for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated this 13th day of August 2007.

JUDITH C. HERRERA
UNITED STATES DISTRICT JUDGE